OPINION
Alessandro Rengan appeals from the judgment and decree of divorce from his wife, Janet Franklin Rengan, rendered by the Common Pleas Court of Montgomery County, Ohio.
Janet and Alessandro were married in 1990. Two children were born of the marriage; Krishna, born May 8, 1991, and Ramachandran whose date of birth is February 23, 1993. Janet filed a complaint for divorce in 1998. The parties reached a property settlement agreement; however, they could not reach an agreement on the issue of child custody and support. Alessandro requested that the trial court adopt a shared parenting plan, while Janet sought sole custody of the children. Following a hearing, the trial court granted custody to Janet. Alessandro timely appealed, raising the following as his sole assignment of error:
 1. THE TRIAL COURT COMMITTED AN ABUSE OF DISCRETION WHEN IT ORDERED THAT JANET SHOULD BE THE CUSTODIAL PARENT.
Alessandro contends that the trial court abused its discretion by failing to implement his proposed shared parenting plan, and by instead, granting custody to Janet.
A trial court's custody determination in a domestic relations case that is supported by a substantial amount of competent and credible evidence will not be reversed as being against the weight of the evidence. Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, syllabus. With regard to review of custody matters, the Ohio Supreme Court has stated the following:
 The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record. In this regard, the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct. (Citations omitted).
Miller v. Miller (1988), 37 Ohio St.3d 71, 74.
R.C. 3109.04(A) states that in a divorce action, the trial court "shall allocate the rights and responsibilities for the care of the minor children of the marriage." In allocating parental rights and responsibilities, the trial court must base its decision on the child's best interest. R.C. 3109.04(B)(1). This includes, but does not limit the trial court, to the following factors listed in R.C.3109.04(F)(1)(a)-(j):
(a) The wishes of the child's parents regarding his care;
(b) * * * [T]he child's wishes;
 (c) The child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interests;
 (d) The child's adjustment to his home, school, and community;
 (e) The mental and physical health of all the persons involved in the situation;
 (f) The parent [who is] more likely to honor and facilitate visitation and companionship rights approved by the court;
 (g) Whether either parent has failed to make all child support payments, including arrearages * * *;
 (h) Whether either parent previously has been convicted or pleaded guilty to any criminal offense involving * * * [the] child * * *;
 (i) Whether the residential parent has continuously and willfully denied the other parent * * * visitation * * *;
 (j) Whether either parent has established a residence or is planning to establish a residence outside the state.
Additionally, when either parent makes a request for shared parenting, the trial court must consider the following factors listed in R.C.3109.04(F)(2):
 (a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;
 (b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;
 (c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnaping by either parent;
 (d) The geographic proximity of the parents to each other, as the proximity relates to the practical consideration of shared parenting;
 (e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem.
In the instant case, the trial court denied Alessandro's request for shared parenting based upon a lack of communication between the parties. The trial court further found that the lack of communication was "mainly attributable" to Alessandro, and had "a profound effect on the children".
From our review of the record, we find that there is sufficient evidence to support a finding that the parties were unable to communicate with each other regarding the children. Janet testified that Alessandro quit talking to her six months prior to the end of the marriage, and that this behavior continued even after the separation. She also testified that he did not call her when one of the children broke his arm during visitation, but rather, the children had to call her. When questioned about the lack of communication, Alessandro was, at best, evasive, and testified that there were in fact times when he communicated with Janet "emotionally and verbally" and at times "other than verbally". The record supports a finding that Alessandro hampered Janet's attempts to communicate with him regarding the care of the children. Furthermore, there was ample evidence that, because of this behavior, the parties were unable to cooperate and make joint decisions regarding the children. This type of conduct would certainly hinder the effective functioning of a shared parenting plan. We therefore find that the trial court did not abuse its discretion by denying the request for shared parenting.
We now address Alessandro's claim that the trial court erred by awarding custody to Janet. A consideration of the factors listed in R.C. 3109.04(F)(1) indicates that this case involved a "close call" on the part of the trial court. As previously stated, Alessandro requested shared parenting, Janet preferred sole custody, and the children expressed no preference.[1] R.C. 3109.04(F)(1)(a) and (b). The evidence indicates that the children interact well with each other, and with Janet; however, there was some slight evidence to indicate that Alessandro favored one child over the other, and that that child tended to be withdrawn from interaction with Alessandro. R.C. 3109.04(F)(1)(c). The evidence further indicates that the children are well-adjusted to school, community, and the school system they are currently enrolled in. R.C. 3109.04(F)(1)(d). According to Dr. Hannah, Janet's psychological functioning is better than Alessandro's.[2] R.C. 3109.04(F)(1)(e). Also, it appears from the record, that neither parent has, or would, impede visitation and companionship rights approved by the court; that neither parent had failed to make child support payments; that neither had been involved with any criminal offense involving the children; and that neither has plans to move out of the state. R.C. 3109.04(F)(1)(f), (g), (h), (i) and (j). From this record, it is clear that both parents love the children, and that they in turn love both of their parents.
The trial court's finding was primarily based upon (1) Dr. Hannah's testimony indicating that Janet would be better suited for having custody of the children, and (2) the evidence showing that Alessandro failed to communicate with Janet regarding the children. Based upon this evidence, the trial court found that awarding custody to Janet was in the best interest of the children. We find that the trial court's determination is indeed supported by competent, credible evidence. We can find no reason in the record to question the exercise of the trial court's broad discretion in this case in awarding custody of the children to Janet. Accordingly, Alessandro's sole assignment of error is overruled, and the judgment of the trial court is affirmed.
 ______________________ FREDERICK N. YOUNG, J.
BROGAN, J. and FAIN, J., concur.
[1] While Alessandro contends that the children gave him higher marks on his parenting skills, the testimony of Dr. Hannah indicated that the number of higher marks given to Alessandro over Janet did not constitute an appreciable difference.
[2] Alessandro claims that the report and testimony provided by Dr. Hannah are flawed because she operated under the assumption that, at the time of her evaluation, the children were under the standard visitation order when, in fact, they were not. From our review, this mistake was addressed, and did not affect the validity of her opinion.